IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

HOPE LUTHERAN CHURCH,

        Plaintiff,

v

CITY OF ST. IGNACE, MICHIGAN,
a municipal corporation

        Defendant.

CASE NO.: 2:18-cv-00155-PLM-TPG

HON. PAUL L. MALONEY

MAG.: HON. TIMOTHY P. GREELEY

Lawrence J. Opalewski, Jr. (P77864)
DALTON & TOMICH, PLC
Attorneys for Plaintiff
719 Griswold Street, Suite 270
Detroit, MI 48226
(313) 859-6000
lopalewski@daltontomich.com

Noel W. Sterett
DALTON & TOMICH, PLC
Attorneys for Plaintiff
504 N. State Street
Belvidere, IL 61008
(815) 986-8050
nsterett@daltontomich.com

Haider A. Kazim (P66146)
Matthew W. Cross (P77526)
CUMMINGS, MCCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defendant
310 West Front Street, Suite 221
Traverse City, MI 49684
(231) 922-1888/(231) 922-9888 (fax)
hkazim@cmda-law.com

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NOW COMES Defendant, CITY OF ST. IGNACE, MICHIGAN, by and through its attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., and in support of its Motion to Dismiss Plaintiff's Complaint states as follows:

1.      To survive a motion to dismiss, Plaintiff must provide a sufficient factual basis to support each claim. Mere labels and conclusions, formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement do not suffice.

2.      Plaintiff must plead sufficient factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged.

3.      Pleadings that fail to comply with this standard fail to state a claim upon which relief can be granted and are subject to dismissal pursuant to Fed. R. Civ. P. 12(c).

4.      To succeed on a First Amendment Freedom of Speech and Assembly claim, Plaintiff must establish that its rights to speak and assemble have been abridged—that the Defendant has prevented it from speaking on matters of religion or from assembling.

5.      Claims based solely on a municipality applying a zoning ordinance and preventing a plaintiff from assembling in a specific building are insufficient because a church has no constitutional right to worship wherever it pleases.

6.      In this case, Plaintiff claims the City is preventing it from assembling in the specific Property it purchased—not that it has been prevented from speaking or from assembling.

7.      Plaintiff's Count I fails to state a claim based on the First Amendment's Freedom of Speech and Assembly upon which relief can be granted.

8.      To succeed on a First Amendment Free Exercise Clause claim challenging a facially neutral law of general applicability, Plaintiff must establish the law targets religious conduct for distinctive treatment.

9.      Where a zoning ordinance was enacted to maximize tax revenue and a church is prevented from operating in a zoning district, the church must identify an institution that does not produce any tax revenue, but is nonetheless permitted to operate in the district.

10.      In this case, Plaintiff fails to identify an institution that does not produce any tax revenue, but is nonetheless permitted to operate in the City of St. Ignace's General Business District ("GBD").

11.     Plaintiff's Count II fails to state a claim under the First Amendment's Free Exercise Clause upon which relief can be granted.

12.     To succeed on a Fourteenth Amendment Equal Protection claim, Plaintiff must adequately plead that the City has treated it differently as compared to similarly situated institutions.

13.     Conclusory allegations of discriminatory intent without facts to support such a finding—including facts necessary to conclude Plaintiff's purported comparator was similarly situated—do not suffice.

14.     In this case, Plaintiff fails to plead any facts that it was treated differently than a similarly situated comparator. In fact, Plaintiff fails to identify any comparator.

15.     Plaintiff's Count III fails to state a claim under the Fourteenth Amendment's Equal Protection Clause upon which relief can be granted.

16.     In evaluating a claim based on the Religious Land Use and Institutionalized Persons Act's ("RLUIPA") Substantial Burden clause, courts consider whether the burden complained of was self-imposed and whether Plaintiff has a feasible alternative location from which it can carry on its mission.

17.     Courts have held that a burden is self-imposed where a plaintiff purchases a property before researching zoning requirements. Courts have also held that a plaintiff has feasible alternative locations where it is able to fully operate at a nearby rented location.

18.     In this case, Plaintiff's claim is based on self-imposed burdens and Plaintiff has a feasible alternative location nearby the Property at issue where it can fully operate.

19.     Plaintiff's Count IV fails to state a RLUIPA Substantial Burden claim upon which relief can be granted.

20. The "Discrimination and exclusion" section of the RLUIPA contains three provisions: (a) the "Equal Terms Clause"; (b) the "Nondiscrimination Clause"; and (c) "Exclusion and limits."

21. To succeed on an Equal Terms claim, Plaintiff must identify a comparator that is similarly situated as to the legitimate regulatory purposes underlying the challenged zoning ordinance.

22. Courts have held that tax revenue maximization and prioritizing the availability of liquor licenses are legitimate regulatory purposes.

23. In this case, Plaintiff fails to identify any similarly situated comparator that does not generate any tax revenue but is nonetheless permitted to operate in the GBD.

24. To succeed on a Nondiscrimination claim, Plaintiff must create an inference that the decision to deny its variance application was based on its religious faith as opposed to the City's legitimate regulatory purposes.

25. Courts have held that where the facts demonstrate that <u>all</u> churches are not permitted in a given zoning district because they do not align with the municipality's goals for that district, a plaintiff cannot succeed on a Nondiscrimination claim.

26. In this case, the facts demonstrate that churches are not permitted in the GBD because they do not align with the City's goals of tax revenue maximization and ensuring the availability of liquor licenses. Plaintiff has pled no facts to the contrary.

27. To succeed on an Exclusion and limits claim, Plaintiff must demonstrate that the challenged ordinance deprives it of reasonable opportunities to practice its religion.

28.   Courts have held that where churches are prohibited from commercial zoning districts but are permitted as of right in other zoning districts, a plaintiff fails to demonstrate that it has been unreasonably deprived of opportunities to practice its religion.

29.   In this case, although the City has not allowed Plaintiff to operate its church in the GBD (a commercial district) with a tax exemption, Plaintiff can operate its church as of right in three (3) of the City's other ten (10) zoning districts.

30.   Plaintiff's Count V fails to state a claim under the RLUIPA Discrimination and exclusion section upon which relief can be granted.

31.   Where a plaintiff raises claims under both the United States Constitution and the Michigan Constitution under the same legal theories requiring the same proof and the federal law claims are dismissed, the state law claims should be dismissed as well.

32.   In this case, Plaintiff raises claims requiring the same proof under both the United States and Michigan Constitution. Plaintiff fails to state a valid claim upon which relief can be granted under the United States Constitution.

33.   As a result, Plaintiff's Count VII (sic) fails to state a claim under the Michigan Constitution upon which relief can be granted.

WHEREFORE Defendant requests this Honorable Court grant its Motion to Dismiss and dismiss Plaintiff's Complaint.

Respectfully submitted,

Dated:   February 4, 2019

CUMMINGS, McCLOREY, DAVIS
& ACHO, P.L.C.

_____/s/ Haider A. Kazim_____
Haider A. Kazim (P66146)
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

HOPE LUTHERAN CHURCH,

     Plaintiff,

v

CITY OF ST. IGNACE, MICHIGAN,
a municipal corporation

     Defendant.

CASE NO.: 2:18-cv-00155-PLM-TPG

HON. PAUL L. MALONEY

MAG.: HON. TIMOTHY P. GREELEY

---

Lawrence J. Opalewski, Jr. (P77864)
DALTON & TOMICH, PLC
Attorneys for Plaintiff
719 Griswold Street, Suite 270
Detroit, MI 48226
(313) 859-6000
lopalewski@daltontomich.com

Noel W. Sterett
DALTON & TOMICH, PLC
Attorneys for Plaintiff
504 N. State Street
Belvidere, IL 61008
(815) 986-8050
nsterett@daltontomich.com

Haider A. Kazim (P66146)
Matthew W. Cross (P77526)
CUMMINGS, MCCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defendant
310 West Front Street, Suite 221
Traverse City, MI 49684
(231) 922-1888/(231) 922-9888 (fax)
hkazim@cmda-law.com

---

**BRIEF IN SUPPORT OF**
**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

Question Presented……………………………………………………………………………iii

Controlling Authorities…………………………………………………………………...vi

Index of Exhibits…………………………………………………………………….....ix

Statement of Facts……………………………………………………………………1

Standard of Review……………………………………………………………………..4

Argument……………………………………………………………………….....…5

I.     Plaintiff's Count I fails to state a claim based on the First Amendment's Freedom of Speech and Assembly upon which relief can be granted……………………………...5

II.    Plaintiff's Count II fails to state a claim under the First Amendment's Free Exercise Clause upon which relief can be granted.......................................................................7

III.   Plaintiff's Count III fails to state a claim under the Fourteenth Amendment's Equal Protection Clause upon which relief can be granted…………………………………11

IV.   Plaintiff's Count IV fails to state a RLUIPA Substantial Burden claim upon which relief can be granted………………………………………………………………...13

V.    Plaintiff's Count V fails to state a RLUIPA Unequal Treatment claim upon which relief can be granted………………………………………………………………...18

VI.   Plaintiff's Count VII (sic) fails to state a claim under the Michigan Constitution upon which relief can be granted…………………………………………………………...24

Conclusion…………………………………………………………………………….25

## Questions Presented

### *The standard under Fed. R. Civ. P. 12*

To survive a motion to dismiss, a plaintiff must provide a sufficient factual basis to support each claim. Mere labels and conclusions, formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement do not suffice. The plaintiff must plead sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Pleadings that fail to comply with this standard fail to state a claim upon which relief can be granted and are subject to dismissal pursuant to Fed. R. Civ. P. 12(c).

I.    To succeed on a First Amendment Freedom of Speech and Assembly claim, a plaintiff must establish that the defendant has prevented it from speaking on matters of religion or from assembling. Claims based solely on a municipality applying a zoning ordinance and preventing a plaintiff from assembling in a specific building are insufficient because a church has no constitutional right to worship wherever it pleases. In this case, Plaintiff claims the City is preventing it from assembling in the specific Property it purchased—not that it has been prevented from speaking or assembling. Has Plaintiff stated a Freedom of Speech and Assembly claim upon which relief can be granted?

**Defendant answers "no."**

II.   To succeed on a First Amendment Free Exercise Clause claim challenging a facially neutral law of general applicability, a plaintiff must establish the law targets religious conduct for distinctive treatment. Where a zoning ordinance was enacted to maximize tax revenue and plaintiff is prevented from operating in a zoning district, plaintiff must identify an institution that does not produce any tax revenue, but is nonetheless permitted to operate in the district. In this case, Plaintiff fails to identify an institution that does not produce any tax revenue, but is nonetheless permitted to operate in the GBD. Has Plaintiff stated a Free Exercise Clause claim upon which relief can be granted?

**Defendant answers "no."**

III.  To succeed on a Fourteenth Amendment Equal Protection claim, a plaintiff must adequately plead that the government has treated it differently as compared to similarly situated institutions. Conclusory allegations of discriminatory intent without factual content to support such a finding—including facts necessary to conclude plaintiff's purported comparator is similarly situated—do not suffice. In this case, Plaintiff fails to adequately plead that it was treated differently than a similarly situated comparator. In fact, Plaintiff fails to identify any comparator. Has Plaintiff stated an Equal Protection claim upon which relief can be granted?

**Defendant answers "no."**

IV.   In evaluating a claim based on the RLUIPA Substantial Burden clause, courts consider whether the burden complained of was self-imposed and whether plaintiff has a feasible alternative location from which it can carry on its mission. Courts have held that a burden is self-imposed where a plaintiff purchases a property before researching zoning requirements. Courts have also held that a plaintiff has feasible alternative locations where it is able to fully operate at a nearby rented location. In this case, Plaintiff purchased the Property at issue before researching zoning requirements and it has a feasible alternative location from which it can fully operate nearby, which it has been renting for years. Has Plaintiff stated a Substantial Burden claim upon which relief can be granted?

**Defendant answers "no."**

V.   The "Discrimination and exclusion" section of the RLUIPA contains three provisions: (a) the "Equal Terms Clause"; (b) the "Nondiscrimination Clause"; and (c) "Exclusion and limits."

a.   To succeed on an Equal Terms claim, a plaintiff must identify a comparator that is similarly situated as to the legitimate zoning criteria underlying the challenged zoning ordinance. Courts have held that tax revenue maximization and prioritizing the availability of liquor licenses are legitimate zoning criteria. In this case, Plaintiff fails to identify any similarly situated comparator that does not generate any tax revenue and adversely impacts the availability of liquor licenses but is nonetheless permitted to operate in the GBD. Has Plaintiff stated an Equal Terms claim upon which relief can be granted?

**Defendant answers "no."**

b.   To succeed on a Nondiscrimination claim, a plaintiff must create an inference that the decision to deny its variance application was based on its religious faith as opposed to the municipality's legitimate regulatory purposes. Courts have held that where the facts demonstrate that no churches are permitted in a given zoning district because they do not align with the municipality's goals for that district, a plaintiff cannot succeed on a Nondiscrimination claim. In this case, the facts demonstrate churches are not permitted in the GBD because they do not align with the City's goals of tax revenue maximization and ensuring the availability of liquor licenses and Plaintiff has not pled any facts to the contrary. Has Plaintiff stated a Nondiscrimination claim upon which relief can be granted?

**Defendant answers "no."**

c.   To succeed on an Exclusion and limits claim, a plaintiff must demonstrate that a challenged ordinance deprives plaintiff of reasonable opportunities to practice its religion. Courts have held that where churches are prohibited from commercial zoning districts but are permitted as of right in other zoning districts, a plaintiff fails to demonstrate it has been unreasonably deprived of opportunities to practice its

religion. In this case, although the City will not permit Plaintiff to operate its church in the GBD (a commercial district) with a tax exemption, Plaintiff can operate its church as of right in three (3) of the City's other zoning districts. Has Plaintiff stated an Exclusion and limits claim upon which relief can be granted?

**Defendant answers "no."**

VI.     Where a plaintiff raises claims under both the United States Constitution and the Michigan Constitution under the same legal theories requiring the same proof and the federal law claims are dismissed, the state law claims should be dismissed as well. In this case, Plaintiff raises claims under both the United States and Michigan Constitution requiring the same proof. Has Plaintiff stated state law claims upon which relief can be granted where his federal law claims are dismissed?

**Defendant answers "no."**

## Controlling Authorities

**United States Constitution**

U.S. Const. amend. I…………………………………………………………………6, 8

U.S. Const. amend. XIV……………………………………………………………11

**Michigan Constitution**

Mich. Const. art I…………………………………………………………………...24

**United States Supreme Court**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………………..5, 12

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)……………...8-9

*City of Cleburne v. Cleburne Living Ctr.*, 437 U.S. 432 (1985)…………………………………11

*Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872 (1990)…………………………………..8

**United States Circuit Court of Appeals**

*Andon, LLC v. City of Newport News*, 813 F.3d 510 (4th Cir. 2016)……………………………14

*Bethel World Outreach Ministries v. Montgomery Cty. Council*, 706 F.3d 548 (4th Cir. 2013)..15

*Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163 (9th Cir. 2011)…....19

*Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011)…………...........11

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir.2010)………………………….…..5

*Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643 (10th Cir. 2006)……..6-8, 11

*Int'l Church of the Foursquare v. City of San Leandro*, 673 F.3d 1059 (9th Cir. 2011)…….14-15

*Lighthouse Inst. for Evangelism Inc. v. City of Long Branch*,

100 Fed. Appx. 70 (3d Cir. 2004)…………………………………………………………15, 17

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*,

510 F.3d 253 (3d Cir. 2007)…………………………………………………………9, 19-20

*Livingston Christian Schools v. Genoa Charter Township*, 858 F.3d 996 (6th Cir. 2017)…..14-17

*Lucas v. Monroe Cty.*, 203 F.3d 964 (6th Cir. 2000)……………………………………………24

*Midrash v. Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004)……………..9, 14

*Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398 (6th Cir. 1999)……………………8

*Nali v. Ekman*, 355 Fed. Appx. 909 (6th Cir. 2009)……………………………………………..12

*Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846 (7th Cir. 2007)………………14

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*,

450 F.3d 1295 (11th Cir. 2006)……………………………………………………………18-19

*River of Life Kingdom Ministries v. Village of Hazel Crest, Illinois,*

611 F.3d 367 (7th Cir.2010)………………………………………………………………19-20

*Rocky Mountain Christian Church v. Bd. of Cnty. Com'rs*, 613 F.3d 1229 (10th Cir. 2010)…...23

*Tree of Life Christian Schools v. City of Upper Arlington, Ohio,*

905 F.3d 357 (6th Cir. 2018)………………………………………………………………19-21

*Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338 (2d Cir. 2007)…………………....15

*World Outreach Conference Ctr. v. City of Chicago*, 591 F.3d 531 (7th Cir. 2009)…………....15

**United States District Court**

*Alger Bible Baptist Church v. Township of Moffatt*, No. 13-13637,

2014 WL 462354 (E.D. Mich. Feb. 5, 2014)……..…………………………………….*passim*

*Johnson v. Trott & Trott, P.C.*, 829 F. Supp. 2d 564 (W.D. Mich. 2011)………………………...5

*McIntosh v. Garofalo*, 367 F. Supp. 501 (W.D. Pa. 1973)……………………………………….4

*Muslim Cmty. Ass'n of Ann Arbor and Vicinity v. Pittsfield Charter Tp.*,

947 F. Supp. 2d 752 (E.D. Mich. 2013)……………………………………………….6-7, 22

**Federal Statutes**

42 U.S.C. 2000cc……………………………………………………………………..13, 18, 22-23

42 U.S.C. 2000cc-5………………………………………………………………….....13

**Michigan Statutes**

M.C.L. 436.1107………………………………………………………………….......4, 22

M.C.L. 436.1503………………………………………………………………….......4, 22

**Rules**

Fed. R. Civ. P. 12…………………………………………………………………………….4

**Secondary Sources**

146 Cong. Rec. 7774-01………………………………………………………………14

## Index of Exhibits

**Exhibit A**    *Nali v. Ekman*, 355 Fed. Appx. 909 (6th Cir. 2009)

**Exhibit B**    *Lighthouse Inst. for Evangelism Inc. v. City of Long Branch*, 100 Fed. Appx. 70 (3d Cir. 2004)

## Statement of Facts

The property at issue in this case, 132 S. State Street, St. Ignace, MI (the "Property"), previously used as a laundromat, lies in the City of St. Ignace General Business District ("GBD"). PageID. 1, 3. Since approximately August 2017, Plaintiff, a church, has used the Property during the week to run a nonprofit coffee shop ministry under the assumed name Harbor Hope Coffee. PageID. 3-4. On Sunday mornings, Plaintiff holds services for approximately 12-18 regular attendees. PageID. 3. Plaintiff receives a tax emption under the Michigan District Lutheran Church Missouri Synod's 501(c)(3) exemption. *Id.*

Plaintiff acquired the Property on or about February 8, 2018. *Id.* Prior to acquiring the Property, Plaintiff held religious services at the Quality Inn in St. Ignace. Believing the Quality Inn was no longer adequate, Plaintiff looked for several years for a new space in which to hold its services. PageID. 4. Plaintiff claims the rented space at the Quality Inn was inadequate and hindered its religious exercise due to (a) the inability to gather without incurring rental expenses; (b) the burden of having to pack up and transport items after every service; (c) the difficulty of providing outreach to the community from a temporary facility; and (d) the burden of not owning a church building visible to the community. *Id.*

The City of St. Ignace Zoning Ordinance (the "Ordinance") states that the GBD was "designed to provide for the general retail stores and service establishments of the community." PageID. 41. It further provides that the "regulations [of the GBD] are designed to promote convenient shopping for motorists as well as pedestrians, with off-street parking being provided by each business." *Id.* Section 38-252 of the Ordinance provides for the following permitted uses in the GBD: (1) any use permitted in the Central Business District ("CBD"); (2) skilled trades shops (plumber, electrician, etc.); (3) car sales/service; (4) retail sale and operation service

1

establishments (restaurants, open markets, outdoor recreation); (5) parking facilities; (6) storage of goods to be sold at retail; (7) other similar uses; (8) accessory structures customarily incidental to the above uses; (9) hotel and motel; (10) living quarters, subject to some restrictions. PageID. 41-42.

The Ordinance describes the CBD as "being designed to provide for office buildings, retail stores, and personal service establishments, which normally occupy the prime retail frontage to service the comparison, convenience, and personal service shopping needs of the community." PageID. 40. It further provides, in relevant part, that the "regulations [of the CBD] are designed to promote convenient pedestrian shopping and stable retail development by encouraging a continuous retail frontage…" *Id.* Like the GBD, the Ordinance provides a list of approved uses in the CBD. The following is a sample of that list, which provides 16 approved uses in total: (1) retail businesses selling commodities (drug store, grocery store, etc.); (2) personal service establishments; (3) restaurants and taverns; (4) theaters or assembly halls; (5) office buildings; (6) banks; and (7) governmental offices. PageID. 40-41.

In total, the City of St. Ignace is divided into ten (10) zoning districts: (1) Single-Family Residential ("R-1"); (2) Two-Family Residential ("R-2"); (3) Mixed Residential ("R-3"); (4) Mobile Home Park ("R-4"); (5) CBD; (6) GBD; (7) Tourist Business; (8) Light Industrial; (9) Waterfront Light Industrial; and (10) Public Recreation. PageID. 32. The Ordinance allows for churches as of right in zones R-1, R-2 and R-3. *See* PageID. 34, 36, 38.

Plaintiff's claims in this case rely entirely on Sec. 38-252's reference to uses permitted in the CBD. PageID. 5. Plaintiff argues that the Ordinance permits theaters, assembly halls when completely enclosed, municipal buildings, and hotels/motels in the CBD, but churches/religious assembly is not a permitted use in the CBD or GBD. PageID. 6. Plaintiff furthers claims that, based

"[u]pon information and belief, there are nonreligious assembly uses and not-for-profit uses operating in both the CBD and GBD in the City." *Id.* However, Plaintiff fails to specifically identify any such institution by name or with any degree of specificity.

On or about June 14, 2018, Plaintiff filed a Zoning Permit Application, seeking to remodel the Property from a laundromat into a church/coffee shop. The application was denied. PageID. 6, 44. Plaintiff also applied for and was denied a property tax exemption. PageID. 4. The City's Zoning Administrator/Assessor informed Plaintiff that pursuant to Section 38-252 of the Ordinance the Property was not zoned for a church due to the fact that it was in the GBD, which does not include a church as a permitted use. PageID. 4, 16. That letter went on to provide in relevant part:

> There are better suited areas of the city where a church can be located. If the property was expected to be tax exempt as a church, the zoning should have been checked before it was acquired. Only certain residential districts allow for churches. If the Harbor Hope Coffee Shop is operating as a church, it is in violation of the city's code of ordinances and must apply for a variance. …If a variance is granted then you may qualify for the tax exemption. PageID. 16.

At the July 12, 2018 meeting of the Zoning Board, Plaintiff, through its representative, appealed the City Manager's denial of the Zoning Permit Application and sought a use variance to use the Property as a church. PageID. 6. Notes taken during that meeting and attached to Plaintiff's Complaint show that Plaintiff's ultimate goal was to avoid paying taxes, which it claims it cannot afford. PageID. 46. The notes further show that although Plaintiff had been interested in the Property since 2016, it had not taken any steps to apply for a variance or special use. *Id.* One Zoning Board member expressed concern that if the Board granted Plaintiff an exemption, it would have to do it for everyone. Another Zoning Board member raised concerns regarding having a

church within 500 feet of an establishment selling liquor.[1] PageID. 6, 47. This member noted that

it would prevent existing and prospective businesses within 500 feet of the church from obtaining

a liquor license and this was inconsistent with the purpose of the GBD. PageID. 47. A third Zoning

Board member, concerned by the prospect of the City losing tax revenue, noted that other nonprofit

businesses in the GBD on Main Street pay taxes. PageID. 6-7, 47. Ultimately, the Zoning Board

unanimously denied Plaintiff's request for a variance.  PageID. 6.

Plaintiff's Complaint raises claims against the City of St. Ignace under six (6) legal

theories: (1) Violation of the First Amendment's Freedom of Speech and Assembly; (2) Violation

of the First Amendment's Free Exercise Clause; (3) Violation of the Fourteenth Amendment's

Equal Protection Clause; (4) Violation of the Religious Land Use and Institutionalized Persons

Act ("RLUIPA")—Imposing Substantial Burden; (5) Violation of the RLUIPA—Unequal

Treatment; and (6) Violation of the Michigan Constitution. PageID. 7-13.

### Standard of Review

A Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b) and a Motion for Judgment on

the Pleadings filed pursuant to Fed. R. Civ. P. 12(c) may, to a certain extent, be used

interchangeably as pretrial challenges to an opponent's claim. *McIntosh v. Garofalo*, 367 F. Supp.

501, 503 (W.D. Pa. 1973). Rule 12(c) motions for judgment on the pleadings are analyzed by the

same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim. *Sensations, Inc. v.*

*City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). The same standards apply to the

---

[1] *See* M.C.L. 436.1503(1) (preventing the Michigan Liquor Control Commission from granting
new applications for a liquor license or renewing/transferring an existing license if the
contemplated location is within 500 feet from a church or school). *See also* M.C.L. 436.1107(7)
(defining a "church" as "an entire house or structure set apart primarily for use for purposes of
public worship, and which is tax exempt under the laws of this state, and in which religious services
are held and with which a clergyman is associated, and the entire structure of which is kept for that
use and not put to any other use inconsistent with that use.").

resolution of each of these challenges regardless of which type of motion is used. *See Johnson v. Trott & Trott, P.C.*, 829 F. Supp. 2d 564, 567 (W.D. Mich. 2011) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir.2010)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The "well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (internal citation omitted).

## Argument

I.     **Plaintiff's Count I fails to state a claim based on the First Amendment's Freedom of Speech and Assembly upon which relief can be granted.**

Plaintiff claims that the Ordinance, on its face and as applied, "treats religious assemblies worse than non-religious assemblies" and that the City's treatment of religious land uses "constitutes a content-based restriction on speech." PageID. 8. Plaintiff further claims the City's

regulation of religious assembly "is not a legitimate time, place, or manner regulation," it "does

not serve a significant government interest, and does not leave open ample alternative channels for

communication." *Id*. Finally, Plaintiff claims that the Ordinance "imposes discriminatory burdens

on those who seek to assemble for religious exercise and speech." *Id*.

The First Amendment prohibits the government from "abridging the freedom of

speech…or the right of the people to peaceably assemble." U.S. Const. amend. I. However, "a

church has no constitutional right to be free from reasonable zoning regulations nor does a church

have a constitutional right to build its house of worship where it pleases." *Grace United Methodist

Church v. City of Cheyenne*, 451 F.3d 643, 652 (10th Cir. 2006) (citation omitted). This Court

need not address any of Plaintiff's allegations until Plaintiff first establishes its rights to speak and

assemble have actually been abridged by the City of St. Ignace.

In *Muslim Cmty. Ass'n of Ann Arbor and Vicinity v. Pittsfield Charter Tp.*, 947 F. Supp.

2d 752 (E.D. Mich. 2013), the Court dismissed a remarkably similar Free Speech and Assembly

claim, reasoning:

> Nothing in Plaintiff's complaint suggests that Defendants have
> prevented Plaintiff from speaking on matters of religion or
> expressing its religious faith to anyone, nor prohibited [Plaintiff's]
> students from assembly. The Court believes Plaintiff expands the
> right to assemble too far by claiming that [Plaintiff's] students have,
> not only a right to assemble, but a right to do so in an "adequate
> school." *Id*. at 771.

In *Alger Bible Baptist Church v. Township of Moffatt*, No. 13-13637, 2014 WL 462354

(E.D. Mich. Feb. 5, 2014) (ECF No. 17-1), counsel for Plaintiff in the instant case made nearly

identical legal arguments under facts remarkably similar to this case. The plaintiff in *Alger* did not

suggest that the township prevented from speaking on matters of religion or expressing its faith to

anyone, nor did it suggest that the ordinance prohibited its members from assembling. Instead,

plaintiff simply argued that it was prevented from practicing its religion in the precise location it wanted to. As a result, the Court dismissed plaintiff's Freedom of Speech and Assembly claim, holding that plaintiff failed to state a claim upon which relief could be granted. PageID. 153. The same outcome is required here.

As in *Alger Bible Baptist Church* and *Muslim Cmty. Ass'n of Ann Arbor*, Plaintiff has not alleged, nor can it prove, that the City of St. Ignace has prevented it from speaking on matters of religion or assembling. Neither the Ordinance nor the City's decision not to allow Plaintiff to operate a church in the GBD with a tax exemption prevents Plaintiff from speaking about religion or assembling. In fact, the City of St. Ignace has agreed to allow Plaintiff to continue to speak and assemble at the Property during the pendency of this case. ECF No. 12. Plaintiff's claim is simply that it is being prevented from practicing its religion on the property that it desires to use. However, as noted above, Plaintiff's right to assemble does not include a right to assemble in the structure of its choosing. *Grace United Methodist*, 451 F.3d at 652.

Plaintiff remains free to speak on matters of religion and assemble in any manner it chooses, provided it complies with the limitations imposed by the Ordinance and continues paying taxes. The City of St. Ignace has not prevented Plaintiff from speaking or assembling. Plaintiff's conclusory allegation that the City's actions violate the First Amendment's Freedom of Speech and Assembly Clause are not entitled to the presumption of truth. As a result, Plaintiff has failed to state a Freedom of Speech and Assembly claim upon which relief can be granted and dismissal is appropriate.

## II.     Plaintiff's Count II fails to state a claim under the First Amendment's Free Exercise Clause upon which relief can be granted.

In support of Plaintiff's claim under the Free Exercise Clause, it claims that the Ordinance, on its face and as applied, substantially burdens Plaintiff's free exercise of religion, while

permitting nonreligious assemblies to be free of such burdens. Plaintiff further claims that the

Ordinance is not neutral, not generally applicable, and is a system of individualized assessments.

PageID. 9.

The First Amendment's Free Exercise Clause, made applicable to state and local

governments by the Fourteenth Amendment, provides that "Congress shall make no law respecting

an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

"Religious exercise" means, "first and foremost, the right to believe and profess whatever religious

doctrine one desires." *Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878 (1990). This

protection includes:

> the performance of (or abstention from) physical acts: assembling
> with others for a worship service, participating in sacramental use
> of bread and wine, proselytizing, abstaining from certain foods or
> certain modes of transportation. It would be true…that a State would
> be 'prohibiting the free exercise [of religion]' if it sought to ban such
> acts or abstentions only when they are engaged in for religious
> reasons, or only because of the religious belief that they display. *Id.*

However, "[the] right of free exercise does not relieve an individual of the obligation to

comply with a valid and neutral law of general applicability on the ground that the law proscribes

(or prescribes) conduct that his religion proscribes (or prescribes)." *Id.* at 879. Therefore, the

primary question is whether the Ordinance is a neutral law of general applicability. If it is, it does

not violate Plaintiff's right to freely exercise its religion. *See Mount Elliott Cemetery Ass'n v. City

of Troy*, 171 F.3d 398, 405 (6th Cir. 1999). If it is not a neutral law of general applicability, it is

subject to strict scrutiny. *Id.* "A law is neutral so long as its object is something other than the

infringement or restriction of religious practices." *Grace United Methodist*, 451 F.3d at 649-50

(citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)). The

starting point for this analysis "must begin with [the Ordinance's] text[.]" *Id.* at 533.

Sections 38-251, 38-252, 38-231, and 38-232 of the Ordinance are neutral on their face. PageID. 40-42. While churches are not permitted in the CBD and GBD, neither are many other secular businesses: junkyards, salvage yards, funeral homes, cemeteries, kennels, landfills. Page ID. 34, 43. Churches are permitted as of right in three (3) of the City's ten (10) zoning districts. Plaintiff's Complaint does not address or overcome the fact that the relevant Ordinance provisions are facially neutral, nor does it demonstrate that the City's objective is infringement or restriction of religious practices as opposed to its stated goals of promoting commerce and maintaining the City's tax revenue. *See Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 277 (3d Cir. 2007) (finding ordinance to be neutral law because there was no evidence that it "was passed due to religious animus…was discriminatorily enforced against religious institutions…[or] devalued religious reasons by judging them to be of lesser import than nonreligious reasons.") (internal citations omitted)); *Midrash v. Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1234 (11th Cir. 2004) ("Zoning laws inherently distinguish between uses and necessarily involve selection and categorization, often restricting religious assemblies to designated districts and frequently requiring that religious assemblies complete a conditional use application procedure.").

Despite being a facially neutral law, the Ordinance could nonetheless offend the Free Exercise Clause if it "targets religious conduct for distinctive treatment…" *Lukumi Babalu*, 508 U.S. at 534. In *Alger Bible Baptist Church*, 2014 WL 462354 (ECF No. 17-1), the defendant township precluded the plaintiff from building its church in the township's highway commercial district. Plaintiff challenged the township's ordinance and claimed, *inter alia*, that the ordinance violated the Free Exercise Clause. The Court dismissed plaintiff's Free Exercise Clause claim,

holding that plaintiff "ha[d] not pled sufficient facts to demonstrate that the Zoning Ordinance impermissibly targets religious conduct for distinctive treatment," PageID. 152, and reasoned:

> [E]ven if the Township Supervisor stated "that he did not want [the church] to operate at the Property because it would not generate any tax revenue," this statement does not impermissibly target religion; instead, the statement aligns with the Zoning Ordinance's purpose: promoting tax payer's commercial retail services in conjunction with a major highway interchange area. …

> [The church] also emphasizes that religious structures are not permitted in highway commercial zones while "secular institutions like theatres and commercial recreation" are permitted. Of course, theatres and commercial recreation generate revenue, and thus fall directly in line with Moffatt's goal of "encourag[ing] the development of general retail" in the highway commercial district. [The church] does not advance a single, non-secular institution that does not produce some form of tax revenue for the Township but that is nevertheless permitted to operate in the highway commercial district. *Id.*

A similar outcome is mandated in this case. While Plaintiff's church is not permitted in the CBD or GBD, it is permitted in three (3) of the City's ten (10) zoning districts. (It is significant to note that in *Alger Bible Baptist Church*, churches and other religious buildings were not permitted by right in any zoning district.) Plaintiff's conclusory allegations that the Ordinance imposes substantial burdens on Plaintiff while allowing nonreligious assemblies to be free from those burdens is not entitled to the presumption of truth. Plaintiff has not advanced a single institution that produces no tax revenue but is nonetheless permitted to operate in the GBD. Plaintiff has not pled sufficient facts to support a finding that the City's actions were a result of targeting religion for distinctive treatment as opposed to concern for the decision's impact on the City's tax revenue and surrounding businesses. The City does not desire, nor has it ever desired, to prevent Plaintiff's congregation from freely exercising their religion. The City is opposed to Plaintiff operating a

church with tax-exempt status in the City's GBD due to the impact it would have on the City's tax revenue and surrounding businesses.

Further, Plaintiff's allegation is not that the City of St. Ignace has prevented it from practicing the tenets of its faith. Rather, Plaintiff alleges it is not able to do so in a particular building with a tax exemption. This does not implicate the First Amendment's Free Exercise Clause. As stated in *Grace United Methodist*, "a church has no constitutional right to be free from reasonable zoning regulations nor does a church have a constitutional right to build its house of worship where it please." 451 F.3d at 652. The City has simply declined to allow Plaintiff to use a particular property in the GBD with a tax exemption. This decision in no way affects Plaintiff's ability to freely exercise its religion. As a result, Plaintiff's Free Exercise Clause claim should be dismissed.

**III.    Plaintiff's Count III fails to state a claim under the Fourteenth Amendment's Equal Protection Clause upon which relief can be granted.**

In support of Plaintiff's Equal Protection claim, it alleges the City discriminates against certain land uses based solely on the religious content of the speech. PageID. 10.

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In essence, the clause is "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 437 U.S. 432, 439 (1985) (citation omitted). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to *similarly situated persons* and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio– Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quotation and citation omitted) (emphasis added).

A well-pleaded Equal Protection claim requires facts supporting a finding that the plaintiff was subject to disparate treatment as compared to similarly situated persons. Mere conclusory allegations of discriminatory intent without details to support such a finding—including details necessary to conclude plaintiff's purported comparator was similarly situated—does not suffice. *Nali v. Ekman*, 355 Fed. Appx. 909, 912–13 (6th Cir. 2009) (**Exhibit A**) (citing *Iqbal*, 556 U.S. 662).

In *Alger Bible Baptist Church*, 2014 WL 462354 (ECF No. 17-1), the Court dismissed plaintiff's Equal Protection Claim, holding that it failed to offer evidence that similarly situated secular institutions had been permitted in the township's highway commercial zone. In plaintiff's response to the township's motion to dismiss, it argued that "similar secular speech and assembly uses are permitted as of right in the [] zoning district." PageID. 153. However, the Court held the lack of concrete examples of **specific similarly situated** secular institutions in plaintiff's response and complaint rendered plaintiff's Equal Protection claim deficient as a matter of law. PageID. 153-154.

As in *Alger Bible Baptist Church*, Plaintiff's Complaint fails to identify **specific similarly situated secular institutions** that are permitted to operate in the GBD. Instead, Plaintiff alleges only that "[u]pon information and belief, there are nonreligious assembly uses and not-for-profit uses operating in both the CBD and GBD in the City." PageID. 5. As in *Alger Bible Baptist Church*, the question that has to be asked is: "What are those similarly-situated secular institutions?" Plaintiff has failed to answer this question. Plaintiff has not identified a single secular institution that does not generate some form of tax revenue but is nevertheless permitted to operate in the GBD. To the extent such entities actually exist, Plaintiff has not pled, nor can it prove, that these

entities do not generate tax revenue. In other words, Plaintiff has not sufficiently pled facts to establish it was treated differently than a similarly situated comparator.

Plaintiff fails to make a plausible allegation that similarly situated nonreligious organizations have been treated differently by the City of St. Ignace. The allegations contained in the Complaint as to disparate treatment amount to conclusory statements and threadbare recitals of the elements of the cause of action, which are insufficient to survive a 12(c) motion. As a result, Plaintiff's Equal Protection claim should be dismissed.

IV. **Plaintiff's Count IV fails to state a RLUIPA Substantial Burden claim upon which relief can be granted.**

In support of Plaintiff's RLUIPA Substantial Burden claim, it alleges that the Ordinance "imposes a substantial burden on the religious exercise of the Church." PageID. 10. Plaintiff further alleges that the substantial burden imposed by the Ordinance is not the least restrictive means of furthering a compelling governmental interest. PageID. 11.

Section 2 of the RLUIPA, referred to as the "Substantial Burden Clause," prohibits imposing or implementing a land-use regulation in a manner that imposes a "substantial burden" on the religious exercise of a person, assembly, or institution unless the government can show that the regulation furthers a "compelling governmental interest" by "the least restrictive means." 42 U.S.C. 2000cc(a). In order to prevail on a substantial burden claim, Plaintiff must first demonstrate the ordinance at issue actually imposes a substantial burden on religious exercise.[2] Although the RLUIPA does not define "substantial burden," the legislative history indicates that it is to be

---

[2] RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," including "[t]he use, building, or conversion of real property for the purpose of religious exercise." 42 U.S.C. 2000cc-5(7). The City does not dispute that Plaintiff's claim implicates "religious exercise."

interpreted by reference to RLUIPA's precursor, the Religious Freedom Restoration Act ("RFRA"), and First Amendment jurisprudence. *See* 146 Cong. Rec. 7774-01, 7776.

In *Livingston Christian Schools v. Genoa Charter Township*, 858 F.3d 996 (6th Cir. 2017), the Sixth Circuit squarely addressed the issue of what constitutes a "substantial burden" under RLUIPA. As the Court explained, "not just any imposition on religious exercise will constitute a violation of RLUIPA. Instead, a burden must have some degree of severity to be considered 'substantial.'" *Id*. at 1003. In support of that general proposition, the Court cited decisions in other circuits[3] and noted that failure to adhere to this rigorous standard "would exempt religious institutions from all land-use regulations." *Id*. The Court went on to note that other circuits have identified several factors to consider when attempting to determine whether a land-use regulation imposes a substantial burden on a religious institution.

One factor to consider is whether the plaintiff's own actions caused the burden at issue, because a self-imposed burden is not imposed by governmental action altering a legitimate, pre-existing expectation that a property could be obtained for a particular land use. *Andon, LLC v. City of Newport News*, 813 F.3d 510, 515 (4th Cir. 2016) (plaintiff's burden was self-imposed where it entered into a contingent lease agreement despite knowing the property failed to meet zoning requirements); *Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007) (burden associated with purchasing property in an industrial zone for use as a church after being informed its special-use application would be denied because the ordinance banned churches in that zone was self-imposed).

---

[3] *See Int'l Church of the Foursquare v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (explaining that a substantial burden "must impose a significantly great restriction or onus upon [religious] exercise."); *Midrash*, 366 F.3d at 1227 (concluding that a substantial burden is "more than an inconvenience").

Another factor to consider is whether the religious institution has a feasible alternative location from which it can carry on its mission. *World Outreach Conference Ctr. v. City of Chicago*, 591 F.3d 531, 539 (7th Cir. 2009) (concluding there was no substantial burden where plaintiff owned other empty space where it could construct its building); *Lighthouse Inst. for Evangelism Inc. v. City of Long Branch*, 100 Fed. Appx. 70, 73, 77 (3d Cir. 2004) (**Exhibit B**) (concluding plaintiff had not demonstrated likelihood of success on substantial burden claim when it was denied zoning variance on property it purchased because it was able to fully operate at a rented location nearby).[4]

Ultimately, the Court in *Livingston* upheld the district court's dismissal of plaintiff's substantial burden claim. In support of its holding, the Court noted the plaintiff had put forth only conclusory evidence its current facilities were inadequate and it did not identify any of its core religious functions that could not be carried out. *Livingston*, 858 F.3d at 1006. Specifically, plaintiff merely alleged, *inter alia*, that "the fulfillment of [its] religious mission of operating a Christian school to serve the entire Livingston County community necessitated a move…to a facility more centrally located"; that the current property was "without easy access to the interstate or major commuter roads," making attracting students difficult; that its current property "required extensive maintenance and was in need of expensive repairs." *Id.* at 1006-07. The Court held that

---

[4] In the limited cases where courts have found a plaintiff had no feasible alternative location and could succeed on a substantial burden claim, courts required evidence the alternative facility was so inadequate it prevented the institution from carrying out its core religious functions. *See Bethel World Outreach Ministries v. Montgomery Cty. Council*, 706 F.3d 548, 558 (4th Cir. 2013) (the facility was so overcrowded the church had to hold four services on Sunday, shorten each service, change its Communion and "Alter Call" practices and turn people away); *Int'l Church of the Foursquare*, 673 F.3d at 1068-69 (the church's "core beliefs" required it to assemble in one worship service, but it was unable to do so in current facility); *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 352 (2d Cir. 2007) (the plaintiff school was expanding and its existing building did not have sufficient space).

although these reasons "provide[d] a modicum of support for the proposition" that plaintiff's current property was inadequate, it was insufficient to defeat the township's motion and plaintiff's purported fears that it would have to close its doors altogether was "little more than speculation...not substantiated by facts in the record." *Id.* at 1007.

The Court further concluded that even if it assumed that plaintiff's characterization of its current location as remote and inaccessible was supported by admissible evidence, remaining at the current location did not impose a substantial burden. In reaching that conclusion, the Court noted that the desired location was merely 12.1 miles from the current location and that the current location was actually 1.2 miles closer to the geographic center of Livingston County than the desired location. *Id.* at 1008. The Court concluded that even if the 12.1 mile distance was the appropriate distance to consider, it was "not so significant as to impose a substantial burden on the religious exercise of [plaintiff]." *Id.* at 1008-09 (citation omitted).

Applying the foregoing factors to this case, Plaintiff has not sufficiently pled that the City of St. Ignace has imposed a substantial burden on its religious exercise. As an initial matter, the burden Plaintiff complains of is self-imposed. The City did not impose the "burden" of Plaintiff purchasing the Property before researching the City's zoning restrictions. This burden was undeniably self-imposed. Further, Plaintiff has a feasible alternative location from which it can carry out its mission—the Quality Inn location it has rented for years. PageID. 4. Although Plaintiff cites factors related to the Quality Inn location to support its assertion that remaining there may impose some level of <u>inconvenience</u>, these inconveniences do not rise to the level of a <u>substantial burden</u> of its religious exercise.

Specifically, Plaintiff cites (a) the inability to hold services without incurring additional rental expenses at the Quality Inn, (b) the burden of packing up and transporting materials after

every services, (c) difficulty of providing outreach to the community from a temporary facility, and (d) the burden of not owning a church building visible to the community, as reasons that the Quality Inn is inadequate. However, what Plaintiff utterly fails to cite is any actual burden on *its core religious functions*—any religious function that it cannot carry out at the Quality Inn location. And unlike the cases cited above wherein the plaintiff religious organization was teeming with members giving rise to a need for expansion and having to turn would be parishioners away due to inadequate space, Plaintiff routinely hosts only 12-18 members each Sunday. Indeed, Plaintiff does not allege that the Quality Inn provides insufficient space. Plaintiff has not pled sufficient facts to support an inference that the Quality Inn is not a feasible alternative from which Plaintiff can carry out its religious mission.

Finally, Plaintiff's desire for a permanent location from which it can more easily provide outreach to the community is analogous to the desire for a more centrally located building discussed in *Livingston*. However, the Property in this case is a mere 1.5 miles from the Quality Inn location Plaintiff has used for years and, as the Court noted in *Livingston*, in order to meet its burden of proof Plaintiff must do more than cite a desire to avoid additional rental expenses at the Quality Inn. *Livingston*, 858 F.3d at 1005-06 (citing *Lighthouse Inst. for Evangelism Inc.*, 100 Fed. Appx. at 73, 77).

Plaintiff has failed to sufficiently plead facts to support its claim that requiring it to comply with the Ordinance or remain at the Quality Inn location constitutes a substantial burden imposed by the City of St. Ignace. The Quality Inn location is a feasible alternative location and the burdens of which Plaintiff complains are self-imposed. As a result, Plaintiff fails to state a RLUIPA Substantial Burden claim upon which relief can be granted and dismissal is appropriate.

V.   **Plaintiff's Count V fails to state a RLUIPA Unequal Treatment claim upon which relief can be granted.**

In Count V, Plaintiff claims the City of St. Ignace, "treats religious assemblies or institutions, including [Plaintiff], on less than equal terms with non-religious assemblies or institutions"; that the Ordinance "on its face and as applied…discriminates against assemblies or institutions…on the basis of religion…[and] unreasonably limit[s] religious assemblies within its jurisdiction." PageID. 11. As a result, Plaintiff argues, the City of St. Ignace has violated the RLUIPA's Equal Terms and Exclusions and Limits provisions. Under the heading "Discrimination and exclusion" of the RLUIPA are three provisions: (1) the "Equal Terms Clause"; (2) the "Nondiscrimination Clause";[5] and (3) "Exclusion and limits." 42 U.S.C. 2000cc(b).

*(1) Equal Terms Clause*

This Clause provides that: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." *Id.* § 2000(cc)(b)(1). Plaintiff must sufficiently plead the following four (4) elements to state a prima facie claim: (1) it is a religious assembly or institution (2) subject to a land use regulation, (3) that treats the religious assembly on less than equal terms, with (4) a nonreligious assembly or institution. *See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1307 (11th Cir. 2006). In this case there is no dispute that the first two elements are established. However, Plaintiff has not sufficiently pled facts to support the third and fourth elements.

---

[5] Plaintiff's Complaint does not explicitly allege that the City of St. Ignace has violated the RLUIPA Nondiscrimination Clause, but it does allege the City "discriminates against assemblies or institutions, including [Plaintiff], on the basis of religion." PageID. 11. Although a claim under this theory has not been properly plead, it is addressed below for the sake of being thorough and illustrating that Plaintiff has not pled any claim under the RLUIPA upon which relief can be granted.

The RLUIPA does not define the meaning of "equal terms." However, in *Tree of Life Christian Schools v. City of Upper Arlington, Ohio*, 905 F.3d 357 (6th Cir. 2018), the Sixth Circuit provided guidance on the issue. After adopting the four element prima facie case standard articulated in *Primera Iglesia*, the Court focused its analysis on what constitutes a proper comparator for the analysis. The Court ultimately adopted what it viewed as the majority view of what constitutes a proper comparator articulated by the Third, Seventh and Ninth Circuits,[6] requiring a comparator to be "similarly situated with regard to legitimate zoning criteria." *Id.* at 370.

*Tax revenue maximization, maintaining the character of the GBD and prioritizing the availability of liquor licenses are legitimate zoning criteria.*

In *Tree of Life*, the plaintiff Christian school was denied a zoning variance to operate in one of the city's commercial districts based on the city's zoning ordinance restricting schools (secular or religious) from operating in the commercial district. As grounds for its denial, the city cited its desire to maximize its tax revenue. The plaintiff argued this was not a legitimate regulatory purpose and the reason was pretextual. *Tree of Life*, 905 F.3d at 371.

The Court quickly dismissed the argument that revenue maximization was not a legitimate zoning criteria and, in doing so, cited a case in which the Seventh Circuit specifically identified "generating municipal revenue" as a legitimate regulatory purpose that could be pursued by separating residential and commercial uses within a jurisdiction. *Id.* (citing *River of Life Kingdom*

---

[6] *See Lighthouse Inst. for Evangelism,* 510 F.3d at 266 ("a regulation will violate the [e]qual [t]erms provision only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similar situated *as to the regulatory purpose.*"); *River of Life Kingdom Ministries v. Village of Hazel Crest, Illinois,* 611 F.3d 367, 371 (7th Cir.2010) (the focus should be on secular assemblies or institutions similarly situated *as to the "accepted zoning criteria"* rather than the regulatory purpose.); and *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1173 (9th Cir. 2011) (adopting Seventh Circuit's approach).

*Ministries,* 611 F.3d at 373). The Court further noted it was "loath to reject revenue maximization as a legitimate zoning criterion…[and] [p]roviding such a national answer to a traditionally state and local issue runs counter to the principles of federalism." *Tree of Life*, 905 F.3d at 372.

Likewise, the Court rejected plaintiff's pretext argument. In support of its argument, plaintiff cited the fact that the ordinance permitted nonprofits in the district from which the city could not collect taxes. However, as the Court explained, the city "need not tailor its zoning regulations to squeeze every last dollar out of the permitted uses…to credibly claim that it has structured the [ordinance] to generate more revenue than would be generated without the restrictions." *Id.* at 372-73.

In *Lighthouse Inst. for Evangelism*, 510 F.3d at 270, the City of Long Branch's legitimate zoning criteria was creating and maintaining a "retail main street." The City argued that churches "by their nature are not likely to foster the kind of extended-hours traffic and synergistic spending it wishe[d] to foster…and that churches are different from the allowed secular assemblies because, by operation of a New Jersey statute prohibiting the issuance of liquor licenses in the vicinity of houses of worship, permitting churches into the [district] would hinder the development of modern entertainment-oriented district that Long Branch envisages." *Id.* The Court ultimately agreed that maintaining the character of the district and prioritizing the availability of liquor licenses were legitimate zoning criteria and churches were not similarly situated to secular assemblies with respect to that criteria. *Id.* at 270-272.

As in the foregoing cases, the City of St. Ignace's motivations in this case were revenue maximization, maintaining the character of the GBD, and prioritizing the availability of liquor licenses.

*Plaintiff has failed to identify a comparator similarly situated as to the City's legitimate zoning criteria.*

Having concluded that revenue maximization, maintaining the character of a district, and prioritizing the availability of liquor licenses were legitimate regulatory purposes and having rejected the notion that this purpose was merely pretext, the *Tree of Life* Court turned its attention to potential comparators. In *Alger Bible Baptist Church*, 2014 WL 462354 (ECF No. 17-1), the Court dismissed plaintiff's equal terms claim because plaintiff failed to identify a similarly situated comparator. While plaintiff alleged that "secular institutions like theatres and commercial recreation" are permitted in the highway commercial district, it did not indicate what those institutions are, or how they are similarly situated. This "bare-boned assertion," the Court held, was "inadequate to meet the pleadings requirements." PageID. 155.

As in *Alger Bible Baptist Church*, Plaintiff has failed to adequately plead its Equal Terms claim. The Complaint is silent as to which similarly situated institutions have been treated on different terms than Plaintiff. Plaintiff has not identified any similarly situated comparator that received a more favorable treatment. Plaintiff's "bare-boned" assertion that the City of St. Ignace "treats religious assemblies or institutions, including [Plaintiff], on less than equal terms with non-religious assemblies or institutions"[7] is insufficient. *Alger Bible Baptist Church*, 2014 WL 462354, PageID. 155. Nor does Plaintiff's passing reference to nonprofits operating in the GBD[8] suffice. As Plaintiff is well aware, since it has been paying taxes related to its nonprofit coffee shop operated on the Property, nonprofits do generate tax revenue for the City of St. Ignace. Plaintiff seeks to use the Property as a church **with a tax exemption**—thereby generating no tax revenue for the City and conflicting with the articulated purpose of the GBD by limiting the availability of

---

[7] PageID. 11.
[8] PageID. 5.

liquor licenses.[9] The secular assemblies with which Plaintiff seeks to compare itself do generate tax revenue for the City and create no impediment to the City maintaining the character of the GBD and prioritizing the availability of liquor licenses.

In sum, Plaintiff fails to state a RLUIPA Equal Terms claim upon which relief can be granted and dismissal is appropriate. The City does not desire, nor has it ever desired, to prevent Plaintiff from assembling for religious purposes—as clearly evidenced by the fact that the City has agreed to allow Plaintiff to continue assembling at the Property during the pendency of this litigation. (ECF No. 12). Instead, the City seeks to prevent Plaintiff from operating a church on the Property **with a tax exemption** in the heart of the City's GBD, which is not a permitted use, would reduce the City's tax revenue, and limit the availability of liquor licenses.

*(2) Nondiscrimination Clause*

The RLUIPA Nondiscrimination Clause prohibits imposing or implementing a land use regulation so as to discriminate against an assembly or institution on the basis of religion. 42 U.S.C. 2000cc(b)(2). While courts in this circuit have concluded that the Nondiscrimination Clause "may not necessarily require proof of a similarly situated entity treated differently than the plaintiff," a claim under this provision must still "create an inference that the decision to deny its variance application was based on its religious faith." *Muslim Cmty. Ass'n of Ann Arbor*, 947 F. Supp. 2d at 765.

In *Alger Bible Baptist Church*, 2014 WL 462354 (ECF No. 17-1), the Court dismissed plaintiff's Nondiscrimination Clause claim, holding that the facts "demonstrate[d] that the

---

[9] *See* M.C.L. 436.1503(1) (preventing the Michigan Liquor Control Commission from granting new applications for a liquor license or renewing/transferring an existing license if the contemplated location is within 500 feet from a church or school) and M.C.L. 436.1107(7) (defining a "church" as "an entire house or structure set apart primarily for use for purposes of public worship, **and which is tax exempt** under the laws of this state…").

rezoning request was denied because churches of all types, along with many other secular institutions, do not align with Moffatt's goals regarding its commercial districts." PageID. 155-156.

As in *Alger Bible Baptist Church*, Plaintiff has not pled facts sufficient to give rise to an inference that it was treated differently based on its religious faith. The City's treatment of Plaintiff is consistent with its concern for the decision's impact on the City's tax revenue and the impact on surrounding businesses in the GBD. Churches of all types are prohibited in the GBD as well as many other secular businesses such as junkyards, salvage yards, cemeteries, funeral homes, kennels, and landfills (Page ID. 34, 43) since these uses do not align with the stated goals of the GBD. Plaintiff's conclusory allegation that the City "discriminates against assemblies or institutions, including [Plaintiff], on the basis of religion" is insufficient. Plaintiff fails to state a RLUIPA Nondiscrimination claim upon which relief can be granted and dismissal is appropriate.

*(3) Exclusion and Limits*

The Exclusions and limits provision contains subparts that prohibit: (A) "totally exclud[ing] religious assemblies from a jurisdiction"; and (B) imposing or implementing a land use regulation that "unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. 2000cc(b)(3). In assessing a claim under this provision, a plaintiff must demonstrate that the challenged ordinance "as applied or implemented, has the effect of depriving both [plaintiff] and other religious institutions or assemblies of reasonable opportunities to practice their religion, including the use and construction of structures…" *Rocky Mountain Christian Church v. Bd. of Cnty. Com'rs*, 613 F.3d 1229, 1238 (10th Cir. 2010).

In *Alger Bible Baptist Church*, 2014 WL 462354 (ECF No. 17-1), the Court dismissed plaintiff's exclusion and limits claim, holding that it "ha[d] not demonstrated that the Zoning

Ordinance unreasonably limit[ed] its ability to practice its faith" or that its zoning application was denied because of its religious viewpoints. PageID. 156. In so holding, the Court noted that churches and other religious buildings were welcome in four of the township's six zoning districts, just not two commercial districts. *Id.*

As in *Alger Bible Baptist Church*, Plaintiff's Complaint does not plead sufficient facts to give rise to the inference that the City of St. Ignace has unreasonably limited Plaintiff's ability to practice its faith or that its zoning application was denied because of its religious viewpoints. The City allows for churches as a use by right in three (3) of its ten (10) districts. The denial of Plaintiff's variance application and request for tax exemption is consistent with the City's concern for the decision's impact on the City's tax revenue and the impact on surrounding businesses in the GBD. The denial had nothing to do with Plaintiff's religious viewpoint and Plaintiff has not pled sufficient facts to reach a contrary conclusion. Plaintiff's conclusory allegations fail to state an Exclusions and limits claim upon which relief can be granted and dismissal is appropriate.

**VI.     Plaintiff's Count VII (sic) fails to state a claim under the Michigan Constitution upon which relief can be granted.**

In the final Count of Plaintiff's Complaint, Plaintiff relies on the same facts to plead violations of its rights under the Michigan Constitution[10] that are set forth in detail in discussing the violations of the same rights under the United States Constitution. The alleged violations of the Michigan and United States Constitution require the same proof. *Lucas v. Monroe Cty.*, 203 F.3d 964, 972 n. 4 (6th Cir. 2000) As a result, the City of St. Ignace relies on the arguments set forth above in support of dismissal of Plaintiff's Count VII (sic). Since all of Plaintiff's federal

---

[10] Plaintiff's claims are based on the following sections of the Michigan Constitution: Mich. Const. art I. § 4 (Free Exercise Clause); Mich. Const. art. I § 5 (Free Speech Clause); Mich. Const. art. I § 3 (Freedom of Assembly); and Mich. Const. art. I § 2 (Equal Protection).

law claims should be dismissed due to a failure to state a claim upon which relief can be granted, the state law claims based upon the same theories should be dismissed as well. *See Alger Bible Baptist Church*, 2014 WL 462354 (ECF No. 17-1), PageID. 156 (dismissing plaintiff's claims under the Michigan Constitution reasoning that plaintiff's federal claims failed and "[w]ithout presenting more, its claims necessarily fail under the Michigan Constitution as well").

### Conclusion

Plaintiff's Complaint fails to state a claim upon which relief can be granted and its Complaint must be dismissed.

WHEREFORE Defendant requests this Honorable Court grant its Motion to Dismiss and dismiss Plaintiff's Complaint.

Respectfully submitted,

Dated:   February 4, 2019

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.

_____/s/ Haider A. Kazim_____
Haider A. Kazim (P66146)
Attorneys for Defendant